**Union National Bank of Chicago v. State National Bank of St. Joseph et al.**

1. FRAUD—*Not to be Inferred.*—Fraud is not to be inferred from the fact that a debtor gives to one of his creditors a mortgage upon his real estate for the purpose of securing him to the exclusion of other creditors.

Mortgage Foreclosure.—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. ' Heard in this court at the October term, 1896. Affirmed. Opinion filed December 28, 1896.

GREEN, ROBBINS & HONORE, attorneys for appellant.

PADDOCK, WRIGHT & BILLINGS, attorneys for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This action, which was a bill to foreclose, was heard in the court below in connection with the foreclosure suit of the State National Bank of St. Joseph against the John Moran Packing Company, the Union National Bank, the Atlas National Bank and others. (P. 25 this volume.) Most of the facts stated in the opinion in that case are applicable to the present case, and we refer to the opinion therein as setting forth many facts appertaining to this.

In the present case it appears that the Union National Bank, on the 14th of December, 1895, began an attachment suit against John Moran, levying upon real property by him owned in the city of Chicago, which real property had been by him mortgaged to the State National Bank of St. Joseph, by an instrument by him and his wife executed in the preceding February.

It is insisted by appellant that said mortgage is invalid because it was made with the intent, participated in by the bank, to defraud, hinder and delay the creditors of him, said John Moran, of whom the Union National Bank was then one.

In the court below appellant showed that after the making of the mortgages in February, 1895, the John Moran Packing Company continued to carry on the packing business until some time in the succeeding August; and that during that time the said National Bank of St. Joseph advanced to the Packing company something like a hundred thousand dollars, taking warehouse receipts for its product, as security therefor.

Mr. John Moran testified that, prior to the making of the mortgages and conveyances in February, 1895, Mr. Donovan, manager of the Union Stock Yards of St. Joseph, in the interests of said National Bank, told him, Moran, that if he did not give to said bank a mortgage on all of his property he would have to close up. Witness continuing, says : " He said that I would have to give up everything; that it would give these people in Chicago a chance to get my property that was here, if they did not cut them off and secure it for me.. That is the understanding that I had, so I gave them the mortgage on my private property as well as the Moran Packing company's property. Mr. Donovan came to me, and he said if I would give a mortgage on all my property and on the Packing company's property, that they would enable us to run, and keep us running, and help me to get out of debt, and by so doing, keep the banks here from jumping on me, and he made a contract with me, after the giving of the mortgage, that he would not put the deeds on record here, but he would hold them off."

Q. Was anything said about putting the property out of the reach of the Chicago creditors? A. Yes, sir. Mr. Donovan was working in the interests of the State National Bank. It was said that if I did not do it that the Chicago banks here would pluck me bare; would not leave me anything, and they would help me out there if I would do it. That was the expression that Mr. Donovan said. I have expressed myself that Mr. Donovan deceived me in regard to my business affairs.

Q. Haven't you expressed yourself as late as the latter part of 1895, that you would do all you could against the banks to defeat them in these suits? A. Yes, I did. I will tell you just what I said. I said that it was nothing but just and right when the State National Bank wanted to hog the whole thing, that I would come up and help the banks here in Chicago to get part of their money. I said that I would see that everybody got justice. That is all I want in the case.

Q. Didn't you represent at that time to the bank that

unless they helped you out, you would have to fail? A. That I would have to fail? Why, I was failed already, pretty near it.

Q. You told them, did you not, that there was a great deal of money in the packing business that year? A. I told them that I thought there would be money.

Q. If they would advance you money, you could get on your feet and pay all your creditors? A. Yes, sir.

Q. The Union National Bank, and the Atlas National Bank and everybody? Yes, sir, I told them I had enough of property, if it was taken care of, to pay everybody. I run for awhile.

Q. They did everything they could to keep you going? A. I suppose they did.

Q. But finally you discovered that you could not make it go? A. Well, no; I could not make any money.

Q. Did you quit? A. Yes, sir; I had to quit; they would not advance me any more money. At the time these mortgages were given, I had a talk with Mr. C. B. France as to how the business was to be conducted afterward. The conversation related to the possible attack of other creditors. Mr. France said it was to keep the other creditors from coming in and seizing on the stuff; Mr. C. B. France, the president of the bank. Mr. Lake, of the Union National Bank, came up there to look after this business, and Mr. C. B. France told him: "I am running this packing business; everything here belongs to me." Mr. Lake can tell you that.

Q. What was said by Mr. France to you as to where the title to that property should be—as to your doing the work? A. Well, he said, by doing that, nobody else could come down on the property, and that it would enable us to keep running right along.

Q. By doing what? A. By having the hogs bought in his name and turned over to C. M. France, as warehouseman, and we could not get nothing out without Mr. France would let us do it, and cancel the warehouse receipt; then we could get a carload or two carloads whenever we wanted to get them out.

Q. State whether or not Mr. France in any such conversation mentioned the Atlas National Bank or the Union National Bank of Chicago as creditors? A. He mentioned both banks; I mean Mr. France, the president of the bank.

The chancellor before whom this cause was tried, saw and heard the witnesses testify; he had an opportunity for determining as to the real facts of the case which we do not possess.

There is no question as to the indebtedness which the mortgage under consideration was made to secure. Mr. Moran evidently, when the mortgages were made, desired to continue in the packing business, and thought that if he could do so, he would be able to pay all his creditors. In the condition in which he was, it was necessary to his continuance in business that somebody should advance him large sums of money, as the Packing company and Mr. John Moran were then practically insolvent—that is, unable to meet their bills as they matured, if not, as would appear, actually indebted to an amount greater than the value of their assets. It was manifest to all parties that no one would advance money for the continuance of the business without having security therefor. The State National Bank was properly anxious to obtain security for its indebtedness. Instead of commencing in Missouri an action of attachment, and levying upon the plant which this Illinois corporation there had, it secured from the Packing company and Mr. John Moran, mortgages upon the Missouri and the Illinois property which each had; that it did so upon the understanding that with such mortgages it would, from time to time, advance money upon the product of the Packing company, does not show that any of the mortgages were made for the purpose of hindering, delaying or defrauding creditors, either of the Packing company or Mr. John Moran.

So far as the appellee, the State National Bank, is concerned, its mortgage was only for the sum which was then actually due to it by both the Packing company and Mr. John Moran. The evidence does not warrant us in revers-

ing the conclusion of the chancellor that it did not appear that the Packing company made the mortgage under consideration for the purpose of hindering, delaying or defrauding the creditors, or that Mr. John Moran made the mortgage to the knowledge of the State National Bank, for such purpose.

The undisputed facts concerning this transaction are such that fraud is not to be inferred. The burden rested upon appellant to show that such fraud entered into the making of this mortgage as renders it invalid against the creditors of Mr. John Moran.

That there was talk that the Chicago banks would not "jump upon" Mr. Moran if these mortgages were executed, does not establish that the purpose of them was in any way or wise to hinder, delay or defraud creditors of Mr. Moran. That the transaction itself, as shown by the numerous deeds made and executed, did not so impress appellant, is manifest from the fact that ten months elapsed ere it began an attachment against the property of Mr. Moran. It is probably the case that this time had elapsed ere Mr. Moran, not having succeeded as he expected in making money in his continuation of the packing business, and the State National Bank having refused to advance him any more money, came to Chicago and told appellant what he has testified to in this case. The testimony of Mr. Moran does tend to cast suspicion upon the validity of the transaction, but is not sufficient to warrant us in overturning the conclusion of the chancellor, in whose presence the witness testified.

The decree of the Circuit Court is affirmed.